UNITED STATES of America, Plaintiff–Appellee,

v.

Travis Eugene KEESEE, Defendant–Appellant.

No. 02–10333.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 2003.

Filed March 1, 2004.

John W. Rood, III, Phoenix, AZ, for the appellant.

Frederick A. Battista, Assistant U.S. Attorney, Phoenix, AZ, for the appellee.

Before CANBY, KLEINFELD, and RAWLINSON, Circuit Judges.

KLEINFELD, Circuit Judge.

This is a direct criminal appeal. The case raises issues concerning the sentence enhancement provisions of the Armed Career Criminal Act.[1]

## Facts

One thing led to another, from a domestic disagreement to a federal felony conviction. A parking-lot argument between a man and a woman led to a domestic-violence call, that led to discovery of stolen checks, that led to discovery of a gun in the possession of a felon. The gun furnished the basis for a fifteen-year armed career criminal sentence.

A K–Mart employee called the Flagstaff police to report a man and woman fighting in the parking lot. When the first officer got there, the store employee told him that the man, who turned out to be Keesee, had driven off in a motor home, which the employee described to the officer. She also told the officer that the woman had gone into the ladies' room in the store. He had her get the woman out of there, and the woman, who was crying, told the policeman first that the fight was "no big deal," but then said Keesee had grabbed her hand so hard he bent a ring she was wearing.

Another officer quickly found Keesee's motor home parked at an apartment complex near the store, and once backup came, those two police officers approached the motor home. Keesee was no longer in the

---

1. 18 U.S.C. § 924(e).

driver's seat and did not respond to calling out. One of the police officers saw Keesee's backside through the window, in the bunk that overhung the driver's and passenger's seats. The police entered, pulled Keesee out of the bunkbed, handcuffed him, and took him out of the motor home. They arrested him for domestic violence and searched the driver's compartment and bunk area. They found a credit card in the name of someone other than Keesee and the woman with whom he had been fighting. The credit card was face up on the console under the radio. Bolt cutters and a backpack full of checks in other people's names were found in the bunk area.

By this time, the woman was standing outside the motor home. She said that half of the motor home was hers and that the backpack was hers. She was then arrested too, her purse was searched, and an apparently forged check to K–Mart was found in it.

The motor home was taken to a police secured area, and the next day a search warrant was obtained for it. A safe was found in it, and in the safe, a broken handgun and identification for Keesee. The gun led to the federal felon in possession of a firearm charge before us today.

Keesee was convicted in a jury trial of felon in possession of a firearm and sentenced to 180–months imprisonment to be followed by supervised release.[2] His sentence was considerably enhanced under the Armed Career Criminal Act.[3] He appeals the district court's denial of his motion to suppress the gun and his sentence enhancement.

**2.** See 18 U.S.C. §§ 922(g), 924(e)(1).

**3.** Id. § 924(e)(1).

## Analysis

### A. The motion to suppress.

■ Keesee moved twice to suppress. His first motion argued that the initial search of the motor home, before it was impounded, was impermissible. He argued that because he was already separated from the motor home and handcuffed, the search was not incident to arrest, and that the areas of the motor home searched were not within the automobile exception. As a result, he argued, the later search pursuant to the warrant, which turned up the gun in the safe, was fruit of the poisonous tree. Keesee's motion characterized himself as the woman's "husband."

Keesee's second motion to suppress argued that there was no probable cause to arrest him for domestic violence because his parking-lot argument was not serious enough to qualify as a violation of the state domestic-violence statute. His memorandum argued absence of probable cause because the woman told the officer that "all that was taking place between the defendant and his wife/girlfriend was an argument that 'was no big deal.' "

In his brief on appeal, Keesee makes a new argument. He does not repeat the two arguments made in district court. His argument now is that the police officers lacked probable cause to believe that he was in a relationship with the woman that brought him within the domestic-violence statute. The Arizona statute requires a relationship of "marriage or former marriage or of persons residing or having resided in the same household."[4] The police, he says, had no probable cause to believe that he and the woman had any of these denoted relationships.

**4.** Ariz.Rev.Stat. § 13–3601(A)(1).

■ A theory for suppression not advanced in district court cannot be raised for the first time on appeal. Our decision in *United States v. Wright* holds that "[i]t does not matter that [the defendant] made a pre-trial motion to suppress on other grounds, for just as a failure to file a timely motion to suppress evidence constitutes a waiver, so too does a failure to raise a particular ground in support of a motion to suppress."[5] Had Keesee made the argument he makes here to the district court, no doubt testimony at the suppression hearings and argument of counsel would have addressed it. Instead, Keesee called the woman his "wife/girlfriend" and himself her "husband" in his motion papers, plainly not putting their domestic relationship at issue.

### B. Sentencing.

Keesee fell afoul of a mandatory minimum sentencing statute providing that a person convicted of felon in possession of a firearm who has three previous convictions for violent felonies or serious drug offenses is subject to imprisonment for a minimum term of fifteen years.[6]

■ Keesee argues that because his statutory maximum sentence would be less than ten years without the three prior convictions, *Apprendi v. New Jersey*[7] entitled him to a jury trial on whether the prior violent felonies or drug offenses were established beyond a reasonable doubt. This argument is foreclosed by our decision in *United States v. Summers.*[8] In *Summers,* we held that the Armed Career Criminal Act, 18 U.S.C. § 924(e), is not facially unconstitutional because " 'the Constitution does not require prior convictions that increase a statutory penalty to be charged in the indictment and proved before a jury beyond a reasonable doubt.' "[9]

■ Keesee next argues that punishing him more severely for his felon-in-possession crime on account of the prior multiple felonies, as 18 U.S.C. § 924(e) does, results in double punishment in violation of the Double Jeopardy Clause. As he concedes, however, our decision in *United States v. Newton* precludes this argument.[10] *Newton* holds that "[c]umulative punishment does not violate the Double Jeopardy Clause if Congress clearly intended to authorize such punishment."[11] Congress clearly did intend the additional punishment for a felon in possession of a firearm where the felon has been convicted of three or more prior violent felonies or serious drug crimes, so the combination of 18 U.S.C. § 922(g) and 18 U.S.C. § 924(e)(1) does not violate the Double Jeopardy Clause.

■ Finally, Keesee argues that two of his prior convictions cannot properly be used to enhance his sentence under 18 U.S.C. § 924(e) because they are more than ten years old. His only authority for this is an evidence rule, Federal Rule of Evidence 609(b), which limits the use of

---

5. *United States v. Wright,* 215 F.3d 1020, 1026 (9th Cir.2000) (internal quotation omitted).

6. 18 U.S.C. § 924(e)(1).

7. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

8. *United States v. Summers,* 268 F.3d 683 (9th Cir.2001).

9. *Id.* at 688(quoting *United States v. Tighe,* 266 F.3d 1187, 1191 (9th Cir.2001)).

10. *United States v. Newton,* 65 F.3d 810 (9th Cir.1995).

11. *Id.* at 811.

old convictions for impeachment of credibility. Federal Rule of Evidence 609(b) does not purport to limit, and does not have the effect of limiting, the time period for which prior crimes may be considered under the Armed Career Criminal Act. We have previously rejected the proposition that a ten or fifteen-year limit should be placed on crimes that may be considered for purposes of the Armed Career Criminal Act,[12] as have all other circuits that have considered the question.[13] The only time limitation supported by the language of the Armed Career Criminal Act is that the predicate convictions be "previous."[14] We thus reject any link between 18 U.S.C. § 924(e)(1) and Federal Rule of Evidence 609(b). In doing so, we join the only other circuit of which we are aware that has addressed the argument that the limitation in Federal Rule of Evidence 609(b) should be read into § 924(e).[15]

**AFFIRMED.**

---

12. *United States v. Alvarez,* 972 F.2d 1000, 1006 (9th Cir.1992) (per curiam).

13. *See United States v. Paul,* 156 F.3d 403, 404–05 (2d Cir.1998) (per curiam); *United States v. Wright,* 48 F.3d 254, 255–56 (7th Cir.1995); *United States v. Lujan,* 9 F.3d 890, 893 (10th Cir.1993); *United States v. Daniels,* 3 F.3d 25, 28 (1st Cir.1993), *abrogated on other grounds by Alabama v. Bozeman,* 533 U.S. 146, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001); *United States v. Blankenship,* 923 F.2d 1110, 1118 (5th Cir.1991); *United States v. McConnell,* 916 F.2d 448, 449–50 (8th Cir. 1990); *United States v. Preston,* 910 F.2d 81, 89 (3d Cir.1990); *United States v. Green,* 904 F.2d 654, 655–56 (11th Cir.1990); *United States v. Crittendon,* 883 F.2d 326, 330–31 (4th Cir.1989).

14. 18 U.S.C. § 924(e)(1).

15. *See Wright,* 48 F.3d at 255–56.